UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Ramesh B. Malla, plaintiff          :
                                    :
v.                                  :     NO. 3:02cv481
                                    :
University of Connecticut,          :
University of Hartford,             :
Sallie S. Townsend, Ph.D,           :
Robert Smith, Ph.D,                 :
Fred Maryanski, Ph.D.,              :
     defendants.                    :

Ruling on Motion for Summary Judgment of Defendants University of
   Connecticut, Robert Smith, and Fred Maryanski [Doc. #32]

Plaintiff Ramesh Malla's five count second amended complaint alleges employment discrimination based on race, color, and national origin in violation of 42 U.S.C. § 2000e-2(a)(1) against defendant University of Connecticut ("UConn"), racial discrimination in violation of 42 U.S.C. § 1981 against defendants University of Hartford and Sallie Townsend, exclusion from participation in and denial of benefits of federally funded programs based on race, color, and national origin in violation of 42 U.S.C. § 2000d against defendants University of Hartford and Townsend,[1] violation of due process under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 against defendants Robert Smith and Fred Maryanski in their individual capacities only, and aiding and abetting UConn's

---

[1] While plaintiff mentions UConn in this count, he requests relief from the alleged violation of 42 U.S.C. § 2000d only against University of Hartford and Townsend. See Sec. Am. Compl. [Doc. 16] ¶¶ 54, 55.

1

alleged employment discrimination and Smith's and Maryanski's alleged due process violation[2] against defendants University of Hartford and Townsend. Before the Court is defendants UConn's, Smith's, and Maryanski's motion for summary judgment [Doc. #32] on the two counts directed against them, employment discrimination against UConn and due process violation against the individuals. For the reasons set forth below, the motion is GRANTED with respect to plaintiff's employment discrimination claim but DENIED with respect to Malla's due process claim.

I.  **Background**

Malla, who is identified in plaintiff's opposition as "Asia-American of brown skin from Nepal," Opp'n [Doc. #38] at 1, began his employment in 1985 with UConn as non-tenured faculty in the Department of Civil Engineering, and currently works as a tenured Associate Professor in and Associate Head of the same department at UConn's main campus in Storrs, Connecticut. Malla is a member of the American Association of College and University Professors ("AAUP"), and subject to its Connecticut chapter's collective bargaining agreement with UConn, see Maryanski Aff. [Doc. #36]

---

[2] Plaintiff's second amended complaint clearly alleges a due process violation against individual defendants Smith and Maryanski but makes no mention of such violation against defendant UConn. See Sec. Am. Compl. [Doc. #16] ¶¶ 56-60. Thus, the Court understands plaintiff's count five to allege University of Hartford's and Townsend's aiding and abetting of Smith's and Maryanski's alleged due process violation notwithstanding that the second amended complaint speaks of aiding and abetting UConn in depriving plaintiff of due process. See id. ¶ 65.

2

Ex. C.

Defendant Robert Smith was employed by UConn from September 1, 1997 to June 30, 2000 as Vice Provost for Research and Graduate Education and Dean of the Graduate School. As such, he is the chief research officer at UConn, reports to the Chancellor, has signature authority on all grants and contracts related to research, and is the coordinator and supervisor for all programs of research at UConn.

Maryanski has been employed by UConn since 1983, served as Interim Chancellor and Provost from 1999 through 2000, and currently serves as Vice Chancellor for Academic Administration. As Chancellor and Provost, he was the chief academic and operating officer and responsible for managing the operation of UConn. He also was responsible for coordinating and supervising all of UConn's programs of instruction and research, and for coordinating the formulation of policies and administration of all its schools, colleges, divisions, institutes and regional campuses.

From February 1991 to April 2000, Malla served as the Campus Director for UConn of the Connecticut Space Grant College Consortium ("Consortium") and as Principal Investigator at UConn for the Experimental Program to Stimulate Competitive Research Preparation Grant Program ("EPSCOR"). Until 2001, the Consortium consisted of UConn, University of Hartford, University of New

Haven, and Trinity College. The program has its origin in a call from NASA in the Fall of 1990 for several states to establish Space Grant Consortiums. Malla assumed the major role for UConn of drafting and submitting a grant proposal and, after it was accepted, he was named the principal investigator for the program at UConn. The proposal itself identified who would be the Campus Director at each of the original four member institutions of the Consortium, and was signed by UConn by both its president and its Dean of Engineering. The program was funded in 1991.

Participants in EPSCOR included 41 faculty members from ten academic institutions in Connecticut, including UConn, University of Hartford, Yale University, Connecticut College, Central Connecticut State University, Eastern Connecticut State University, Southern Connecticut State University, Trinity College, University of New Haven, and Three River Community College. University of Hartford was the lead institution for EPSCOR, shouldering managerial and fiscal responsibility for the program and selecting the Consortium Director. Under NASA guidelines, the Project Director position for EPSCOR is filled by the same individual selected as Consortium Director.

By letter dated April 14, 2000, defendant Smith removed Malla from the position of Campus Director for the Consortium at UConn, and three days later, on April 17, replaced him with Daniel Civco, a white male. Malla's removal did not alter his

status as Associate Professor or Associate Head, or result in a diminution of his professorial salary. Malla did not file a formal grievance with the AAUP to contest his removal as Campus Director. It is Malla's removal from the Campus Director position and the surrounding circumstances that form the basis of his claims against UConn, Smith, and Maryanski. Additional facts are set forth below as necessary to the understanding of the Court's disposition of defendants' motion.

## II. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Where a party moves for summary judgment on a claim on which the non-moving party bears the burden of proof at trial, the moving party has the initial responsibility to identify those portions of the record which together with affidavits, if any, demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The non-moving party must then go beyond the pleadings and by her own affidavits, or by evidentiary support found in the

court or discovery record, designate specific facts demonstrating a genuine issue of material fact on any element essential to the non-moving party's case that was sufficiently called into question by the moving party. See id. The "District Court must resolve any factual issues of controversy in favor of the non-moving party," Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990), mindful that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The District Court's ultimate concern is "whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

### III. Title VII Analysis

Title VII employment discrimination cases are analyzed under the familiar McDonnell Douglas / Burdine burden-shifting framework. First, the plaintiff must establish a prima facie case of discrimination on account of race, color, or national origin. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2nd Cir. 2000). If the plaintiff meets this requirement, the burden then shifts to the employer to articulate a legitimate, non-

discriminatory reason for the employee's termination. See id. "For the case to continue, the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination. The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Id. (quotation omitted).

### A. Prima Facie Case

To meet the burden required to show a prima facie case of discrimination, plaintiff Malla must establish: (1) membership in a protected class; (2) qualification for his position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination on the basis of membership in the protected class. See e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Graham v. Long Island Rail Road, 230 F.3d 34, 38 (2d Cir. 2000). No one particular type of proof is required to satisfy the fourth element, rather it may take a variety of forms, see Abdu-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 466-68 (2d Cir. 2002), including showing that plaintiff's position was filled with an individual outside of his protected class, see e.g., Cook v. Arrowsmith Shelburne, Inc., 69

7

F.3d 1235, 1239 (2d Cir. 1995). See also Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 253-54 and n.6 (1981); McDonnell Douglas, 411 U.S. at 802 and n.13.

Defendants do not challenge the first three elements of Malla's prima facie case. They argue that there is no evidence satisfying the fourth element with respect to Malla's removal as Campus Director. See Mem. in Supp. of S.J. [Doc. #33] at 9. Defendants focus on the purported absence both of direct evidence of discrimination and evidence showing that Malla was treated less favorably than a similarly situated employee outside his protected group. See generally id. at 9-11.[3] Defendants misapprehend the low threshold of proof necessary to establish a prima facie case. Malla here meets defendants' challenge to the

---

[3] See also id. at 10-11 (quotations and citations omitted, emphasis in original):

> "Malla is unable to demonstrate that there were other similarly situated individuals who were treated differently than the Plaintiff. ... [T]he plaintiff has a burden to demonstrate that another Director at the University of Connecticut, not in the Plaintiff's protected class, was allowed to remain as Director despite similar reports of difficulties in communications or interpersonal relations. The Plaintiff cannot sustain this burden. In the alternative, the Plaintiff states in his Complaint that the University removed him as Campus Director and appointed a white male, Daniel Civco, to replace Plaintiff as Campus Director.... The Plaintiff is factually incorrect in asserting that Mr. Civco is a person similarly situated to provide circumstances giving rise to an inference of discrimination. ... Mr. Civco was not serving in the Director appointment at the same time as the Plaintiff, but rather followed the Plaintiff in the appointment. ... Also, there exists no evidence or information that Mr. Civco was ever found to have difficulties in communications and interpersonal relations with any colleague from the Consortium, nor has there ever been any occasion or circumstance whereupon the NASA Program Manager supported the removal of Mr. Civco. Accordingly, the Plaintiff has failed to demonstrate that another similarly situated individual engaging in conduct similar to the Plaintiff was treated in a different manner.

8

fourth element simply by pointing out that, three days after his removal as Campus Director, his position was filled with a person outside of his protected class, Civco, a white male, see Malla Aff. ¶ 15, a fact defendants do not appear to dispute.

### B.   Legitimate Reason for Discharge

Because Malla has established a prima facie case, "[t]he burden therefore shift[s] to [defendants] to produce evidence that the plaintiff was [removed] for a legitimate, nondiscriminatory reason. This burden is one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing, 530 U.S. 133, 142 (2000) (internal citations, quotations, and alterations omitted), and is satisfied if the proffered evidence "'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000)(quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).[4]

Defendants maintain that Malla was removed from the position of Campus Director of the Connecticut Space Grant College Consortium on April 14, 2000 by Defendant Smith due to

---

[4] At this stage in the analytical framework of McDonnell Douglas, "[a]lthough intermediate evidentiary burdens shift back and forth ..., the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves, 503 U.S. at 143 (quotation omitted); see also Schnabel, 232 F.3d at 88 n.2.

9

"difficulties in communications and interpersonal relations with the Space Grant Principal Investigator, and a confirmation from the NASA Program Manager of these interpersonal issues and support for his removal as Director."  Robert Smith Aff. [Doc. #35] ¶ 9; see also Maryanski Aff. [Doc. #36] ¶ 8 ("Dr. Ramesh Malla was removed as Campus Director of the Connecticut Space Grant College Consortium due to difficulties in interpersonal relations and establishing productive working relationships with other officers of the Consortium.").  In support, UConn submits the affidavits of Maryanski, Defendant Smith, and Regina Smith[5] with attachments, which reveal the history and nature of Malla's disputatious relationships.

From Spring 1999 through April 2000, UConn received notice of Malla's interpersonal and working relationship issues from Defendant Townsend and Laurie Granstrand of the University of Hartford.  During this time frame, Regina Smith, Assistant Vice Provost for Research and Executive Director of the Office for

---

[5] Malla objects to the Court's consideration of Regina Smith's affidavit on the grounds that defendant UConn "did not claim Regina Smith as their witness in their responses to Plaintiff's Interrogatories request, dated October 22, 2003."  E.g., Local Rule 9(c)2 Statement [Doc. #39] at 1 ¶ 6. Malla refers to this objection as a "Motion to Strike," Opp'n [Doc. #38] at 15, notwithstanding not having filed any such formal motion.  He appears to object to the affidavit on the grounds of surprise.  Malla's objection has no merit.  The interrogatory response to which Malla points stated "[n]ot determined at this time" to a question seeking identification of lay witnesses UConn intended to call at trial and of the facts to which such witnesses would testify.  See Resp. to Interrogatories (01/02/2003) at 9 ¶ 21.  In the very same responses provided by Malla, however, UConn explicitly identified Regina Smith twice as an individual integrally involved with the process of removing Malla from his position as Campus Director.  See id. at 6 ¶¶ 7, 10.

10

Sponsored Programs from January 1999 to June 2001,[6] reviewed "all information made available to the University of Connecticut relevant to allegations of working relationship issues of Dr. Malla as Campus Director of the Connecticut Space Grant College Consortium...." Regina Smith Aff. [Doc. #37] ¶ 10. Regina Smith met personally with Malla on several occasions to discuss and receive his response to the allegations of communication and working relationship issues, as well as had telephone and electronic mail communications with him on the subject.

On December 13, 1999, defendant Townsend wrote to UConn's Maryanski about Malla's interpersonal and working relationship deficiencies:

> It is with reluctance, but of necessity, that I am writing to you to request that we replace Ramesh Malla as the University of Connecticut's Campus Director for the CT Space Grant College Consortium. Ramesh has been the primary force in impeding progress toward our goals of improving the CT Space Grant program as well as hampering Connecticut's participation in NASA's EPSCOR program. As I am sure you know, having problems with Ramesh has been a long-term issue for the Consortium. My concern is that now he has expanded the scope of negativity beyond the team of Campus Directors and Consortium management.
>
> As a Campus Director, Ramesh has consistently opposed any attempt on my part to place the grant back in the good graces of NASA. He has sent several broadcast e-mails during this year that were disrespectful to me and, in my opinion, have done great harm to our program. After the September 9th Campus Directors meeting, the Program Manager, Laurie Granstrand, and I discussed his past and present behavior with him and decided to give him one last chance

---

[6] Regina Smith's position required her to function as liaison to external funding agencies and provide institutional support and assistance for funded proposals.

for improvement. Examples and direction for change that would support our stated goal of moving the Consortium forward into the future were candidly discussed. Ramesh denied any wrongdoing even though we cited specific instances of his inappropriate behavior. He indicated he was unaware of his negativity. Should you wish a synopsis of the meeting, I would be happy to share this with you.

Ramesh has chosen a part of not working within the Consortium to voice his concerns and effect any change. Instead he chooses to go directly to NASA headquarters with many petty issues. In addition to consistent attacks on the Space Grant management team, he has presented our program negatively to UConn, the State and to NASA. Here are some specific concerns:

- We are aware through student contact that Ramesh has run down the Space Grant program on your campus.
- We learned from NASA staff that Ramesh had been 'airing' dirty laundry about the CT Space Grant Consortium and expressing his displeasure with the management structure of the EPSCOR Program while visiting the Johnson Space Flight Center.
- His handling of his thrust area coordinator position on the EPSCOR Preparation Grant has been inappropriate. As far as we can tell, he has not kept non-UConn faculty informed. In fact, he was denigrating and rude to a participating Faculty Member at another institution by stating that they were 'token' members of EPSCOR. This is a statewide grant to facilitate research and collaborations with NASA Centers; our goals are to represent the State in the best possible light and foster cooperation between CT research institutions and NASA.

- Ramesh has undermined the management of EPSCOR by the inappropriate assumption of a lead role in coordinating this program, thereby usurping my authority as director. As a result, he has misled at least three other coordinators. All thrust areas are in competition for survival for the next proposal, and only the strongest will survive the next round. He therefore has gained an unfair advantage over the others. As I am not at UConn, it is not easy for me to detect and stop this behavior in real time. I also have concerns about allowing him to continue as the thrust coordinator for the Structures and Materials area due to his consistent attempt to 'take over' the

12

> program.
>
> Ramesh is counterproductive in promoting the Space Grant to UConn by misrepresentation and by the way he works with the Consortium as a whole. As a result, I believe it is in the best interests of the State, the Consortium and the University of Connecticut to effect a change in leadership on the UConn campus. Through conversations with officials in your Research Foundation, we know that there are other NASA-funded investigators at UConn whose outreach activities and/or research interests fit with the Space Consortium's mission. They are:
>
> - Chester Arnold, Jr., Extension Educator, Cooperative Extension Systems
> - Daniel Civco, Ph.D., College of Agricultural & Natural Resources
> - Robert Colwell, Ph.D., College of Liberal Arts & Sciences
>
> We would appreciate the opportunity to approach, interview and discuss this opportunity with each of them and to invite your input.
>
> In summary, my job as Program Director of the CT Space Grant Consortium and EPSCOR Preparation Grant is to promote NASA related research in our state, to promote NASA in the State of Connecticut, and to enhance Connecticut's image within the NASA community. Ramesh's actions are counterproductive to the achievement of these objectives. I believe we have done all we can to rectify the situation to no avail and, since time is of the essence, I feel it is necessary at this time to effect a change in Space Grant leadership on the UConn campus.

Maryanski Aff. [Doc. #36] Ex. B. The letter was copied to University of Hartford's provost and Defendant Smith, and blind copied to Regina Smith. See id. This was the first formal complaint about Malla UConn had received, and Maryanski directed Defendant Smith and Regina Smith to review Townsend's communication and Malla's relationship issues. See Maryanski Aff. ¶ 10.

13

On March 31, 2000 and on June 2, 2000, Regina Smith, Defendant Smith, and Malla met together, and, according to defendants, Malla "was provided: (1) the reasons supporting the decision to remove him as Campus Director; (2) an explanation and presentation of the information supporting the decision to remove him; and (3) an opportunity to respond to the information and present his position." Regina Smith Aff. [Doc. #37] ¶ 12; Robert Smith Aff. [Doc. #35] ¶ 12. Between the two meetings,[7] by letter dated April 14, 2000, Malla was notified of his removal by Defendant Smith. The body of the letter provides,

> I have received your April 11, 2000 letter in which you state your intention not to step down from the position as the University of Connecticut Director of the Connecticut Space Grant College Consortium.
>
> When we met on March 31, 2000, Gina Smith and I reviewed the reasons why we were asking you to step down graciously, including the following:
>
>     - The difficulties in communications and interpersonal relations between you and the Space Grant Principal Investigator which are jeopardizing the operations of the program;
>
>     - The agency Program Manager's understanding of these difficulties and support of the Principal Investigator's wish that you be dismissed from your responsibilities as Director.
>
> Accordingly and based on the authority vested in me (as Vice Provost for Research and Graduate Education) by the Space

---

[7] As clarified by plaintiff's submissions, discussed infra, the second meeting was held after removal at the request of Malla's AAUP representative, Edward Marth, Executive Director of the University of Connecticut Chapter of AAUP. Also present at the June 2, 2000 meeting were Maryanski, Mr. Marth, Virginia Miller, Assistant Vice Chancellor for Human Resources, and Dr. Erling Murtha-Smith, Department Head of Civil Engineering. See Maryanski Aff. [Doc. #36] ¶ 11.

>Grant College Consortium, I am removing your appointment effective immediately.
>
>While I appreciate your efforts on behalf of the University, I regret that you did not see the wisdom of the advice we shared with you on March 31, 2000. But, there are significant University-wide reasons for taking the action consummated by this letter.
>
>On April 17, 2000, I will announce the appointment of a new University of Connecticut Director of the Connecticut Space Grant College Consortium. I hope you will give this person your full cooperation.

Robert Smith Aff. [Doc. #35] Ex. A.

The sixty to seventy pages of electronic mail correspondence attached to Regina Smith's affidavit gives a contemporaneous picture of the tumultuous situation, much of which predates Townsend's December 13, 1999 letter to Maryanski and Robert Smith's April 14, 2000 removal letter to Malla. Most was either contemporaneously sent, copied, or forwarded to Regina Smith.

In July 1999, there arose a matter of contention between Townsend, who had managerial responsibility for Connecticut's Space Grant Program and the EPSCOR NASA grant, and Malla over whether the University of Hartford would distribute the NASA grant to UConn under one subcontract, Malla's preferred method, or five, Townsend's preferred method.[8]

---

[8] For example, on July 25, 1999, Malla sent Regina Smith a three page single spaced electronic mail that attaches a July 22 electronic mail from Townsend to Malla and, in six enumerated paragraphs first quotes from Townsend's correspondence and then in detail explains what is either factually or otherwise incorrect or problematic with Townsend's statements. See e.g., Electronic Mail of Malla to Regina Smith dated July 25, 1999 at 1-4. Upon temporary resolution of the issue, Malla sent an electronic mail to Townsend dated July 28; conceding, "[t]he Thrust Area Coordinators have all agreed to abide by your dictates in the matter of the grant's management...." See