5.      E-mail from Laurie Granstrand to Dr. Townsend, dated May 25, 2000, with

        attached e-mail from Dr. Malla dated May 23, 2000 (3 pages)

6.      E-mail from Laurie Granstrand to Dr. Robert Smith, dated February 25, 2000 (2

        pages)

7.      E-mail from Dr. Townsend to Dr. Regina Smith, dated September 3, 2000 (3

        pages)

8.      E-mail from Dr. Malla to Drs. Edward Pollack and Daniel Civco, dated February

        25, 2000 (2 pages)

9.      E-mail from Laurie Granstrand to Dr. Regina Smith, dated May 18, 2000 (2

        Pages)

10.     E-mail from Dr. Regina Smith to Dr. Townsend, undated, re:restructuring of

        EPSCoR

11.     E-mail from Dr. Civco to Dr. Townsend, dated June 9, 2000 (3 pages)

12.     E-mail from Dr. Civco to Dr. Townsend, dated June 9, 2000 (5 pages)

13.     E-mail from Dr. Julius Dasch to Dr. Malla, dated Dec. 11,1998 (4 pages)

14.     Letter from Dr. Malla to Dr. Joseph Zikmund, dated July 15, 1998 (5 pages)

15.     Letter from Dr. Malla to Dr. Robert Smith, dated April 11, 2000 (2 pages)

16.     Letter from Dr. Robert Smith to Dr. Ramesh Malla, dated April 14, 2000 (2

        pages)

17.     E-mail from Dr. Townsend to Dr. Regina Smith, dated June 2, 2000 (2 pages)

18.     Letter from Dr. Erling Murtha-Smith to Dr. Malla, dated April 19, 2000 (1 Page)

19.     E-mail from Dr. Malla to Dr. Regina Smith, dated August 12, 1999 (1 page)

20.     E-mail from Dr. Malla to Dr. Regina Smith, dated August 22, 1999 (1 page)

21.   Office memo from Dr. Malla to Dr. Regina Smith, dated August 16, 1999 (1 page)

22.   E-mail from Dr. Regina Smith to Dr. Malla, dated August 27, 1999 (3 pages)

23.   Letter from Dr. Jerry Kenig, dated July 22, 1998

24.   E-mail from Dr. Malla to Dr. Regina Smith, dated August 27, 1999 (2 pages)

25.   E-mail from Dr. Malla to Dr. Townsend, dated August 10, 1999 (4 pages)

26.   E-mail from Dr. Townsend to Dr. Malla, dated August 10, 1999 (5 pages)

27.   E-mail from Dr. Townsend to Dr. Malla, dated August 11, 1999 (1 page)

28.   E-mail from Dr. Malla to Dr. Townsend, dated July 28, 1999 (with Dr. Regina Smith's handwritten notes)(1 page)

29.   E-mail from Dr. Malla to Dr. Regina Smith, dated July 25, 1999 (5 pages)

30.   E-mail from Dr. Malla to thrust coordinators, dated July 26, 1999 (1 page)

31.   E-mail from Dr. Malla to thrust coordinators, dated July 21, 1999 (1 page)

32.   E-mail from Dr. Malla to Dr. Regina Smith, dated July 1, 1999 (3 pages)

33.   E-mail from Dr. Regina Smith to Dr. Malla, May 23, 2000 (2 pages)

34.   Letter to Dr. Fred Maryanski from Dr. Murtha-Smith, dated June 12, 2000 (2 pages)

35.   Letter from Dr. Faghri to Dr. Maryanski, dated April 4, 2000 (2 pages)

36.   Letter from Dr. Malla to Mr. Lawrence Myers, Regional Manager, CCHRO, dated October 23, 1997 (15 pages)

37.   Letter from Dr. Malla to Lawrence Myers, dated November 23, 1997 (18 pages)

38.   Draft of letter from Dr. Malla to CCHRO, dated December 10, 1996 (11 pages)

39.   Letter from Dr. Malla to Irene Conlon, dated January 20, 1997 (12 pages)

- 15 -

40.    Internal Dept of Civil Engineering review of Dr. Malla, dated October 3, 1994 (7 pages)

41.    Internal Memorandum re: recommendation of tenure, dated October 4, 1995 (12 pages)

42.    Letter from John Leonard to Dr. Malla, dated October 16, 1995 (7 pages)

43.    Letter from John Leonard to Dr. Malla, dated October 14, 1994 (4 pages)

44.    Letter from Professor Richard Long to Dr. Erling Murtha-Smith, dated May 29, 1990 (4 pages)

45.    Letter from Dr. Malla to Dr. Tighe, dated June 8, 1990 (1 page)

46.    Letter from Dr. Malla to Dr. James Henckel, dated May 17, 1996 (2 pages)

47.    Letter from Dr. Malla to Dr. Harry Johnson, dated September 3, 1996 (3 pages)

48.    Deposition transcripts of Dr. Ramesh Malla

49.    E-mail from Edward Marth to Dr. Malla, dated June 28, 2000 (1 page)

50.    Letter from John Peterson to Dr. Malla, dated July 20, 2000 (1 page)


9.    Stipulations and Conclusions of Law

Plaintiff's Proposed stipulations:

a.    UCONN, is a State of Connecticut educational institute.  UCONN address is 352 Mansfield Road, Storrs, Connecticut 06269.  UCONN is a member of the Consortium and participates in the EPSCoR program.

b.    Defendant, University of Hartford (herein "UHart"), is a private college.  UHart address is 200 Bloomfield Avenue, West Hartford, CT 06117.  UHart is under

- 16 -

contract with NASA to manage and administrate NASA granted funds awarded to the Consortium and EPSCoR programs.

c.    Defendant, Sallie S. Townsend, Ph.D., is employed by UHart as the Associate Dean of Ward College of Technology. Defendant Townsend address is 200 Bloomfield Avenue, West Hartford, CT 06117. Also, Defendant Townsend, at the time, was the Director for the Consortium.

d.    Plaintiff employed by the University of Connecticut and served as UCONN Campus Director for the Connecticut Space Grant Consortium from 1991 until April 14, 2000.

e.    That the University of Hartford is the lead institution for the Consortium that involved fiscal responsibility of the Consortium funds and running the day to day business of the Consortium.

f.    The University of Hartford selected defendant Townsend to serve as the Consortium Director for the Connecticut Space Grant program.


Defendant's Proposed stipulations:

    The defendants will agree to all stipulations above.


10.    Proposed Voir Dire Questions

Plaintiff's Proposed Voir Dire Questions:

1.    Are you currently employed or in the past employed in the capacity as a school teacher or college professor or have some one in your immediate family or associates of friends that is employed as a teacher or college professor.

- 17 -

2.   Are you a member of a labor union.

3.   Do any of you know or know of the plaintiff Dr. Ramesh Malla, a resident of
     Glastonbury and a professor at the University of Connecticut in the Department
     of Civil and Environmental Engineering, either personally or professionally.

4.   Do any of you know or know of, either personally or professionally, any of the
     following witnesses: Dr. Erling Smith, Department Head of the Department of
     Civil and Environmental Engineering at the University of Connecticut;  Dr. Amir
     Faghri, Dean of the Department of Civil and Environmental Engineering at the
     University of Connecticut;  or Edward Marth, Executive director of the American
     Association of University Professors (AAUP).

5.   If you are selected to serve on this jury, do you believe that you can sit and
     judge the plaintiff and defendant fairly.

6.   Do you believe that there are too many lawsuits or that there are to many
     frivolous lawsuits.

7.   This is not a criminal matter, no one's freedom is a risk here.  But if freedom
     was at stake, we should be beyond a reasonable doubt before someone is
     convicted.  Here all that is at stake is damages if liability is found.  Therefore, if
     the judge instructs you that the plaintiff has to tip the scale of justice ever so
     slightly in his favor to prevail, would you be able to follow this instruction.

8.   Who present today is or have been a party to a lawsuit or know of someone
     very close to you that is or was a party to a lawsuit.

9.   Did the lawsuit leave you disillusioned with the legal system.

10.  If you find for the plaintiff, would you be able to grant plaintiff full compensation

- 18 -

for the damages plaintiff proves.

11.   If plaintiff did not suffer a physical injury, but proves stress, frustration, mental anguish, etc., would you still be able to evaluate and award full compensation for this type of injury.


## Defendants' Proposed Voir Dire Questions

1.   Have you ever made a claim of discrimination or a violation of civil rights, and if so, under what circumstances did you make such a claim ?

2.   Does the fact that someone is sued or named as a defendant in a lawsuit make you more inclined to think they are at fault ?

3.   Have you ever personally been involved in a lawsuit ?

4.   Do you have any preconceived notions about what kind of hearing a person is entitled to if they have been accused of wrongdoing ?

5.   If so, what are those preconceived notions ?

6.   Have you ever personally had a negative experience at a college or university and if so, under what circumstances ?


## Proposed Jury Instructions

### Plaintiff's Proposed Jury Instructions:

1.   The claims of plaintiff that the defendants University of Connecticut, Robert Smith, Ph.D. and Fred Maryanski, Ph.D. are no longer before you and need not be decided by you.

- 19 -

2.    The Constitution of the United States protects government employees against

the derivation of property or liberty without procedural due process.

You may find plaintiff has a property interest in the position of Campus

Director at the University of Connecticut by examining a broad range of

interests that are secured by existing rules or understanding.

You may find that plaintiff had a property interest in the position of

Campus Director implied into his contract with the University of Connecticut

that resulted from a course of dealing and practice between the parties, you

must find plaintiff was entitled to some form of due process for being removed

as Campus Director.

You may find plaintiff has a liberty interest if you determine that plaintiff

was removed as Campus Director on the basis of evidence that impugns

plaintiff's good name, reputation, honor or integrity was at stake.

Brady v. Gebbie, 859 F.2d 1543 (9th Cir. 1988).   Ezekwo v. NYC Health &

Hospital Corp., 940 F.2d  775 (2nd Cir. 1991).

3.    You may find plaintiff's interest in the Campus Director substantial if you find

that took a lead position to respond to NASA call for statewide applications for

space grant programs, plaintiff served as Campus Director for nine years and

was initially appointed by the President of the University of Connecticut, and

that the Dean of the Department of Civil and Environmental Engineering

appointed plaintiff to serve as Campus Director.

Hurley v. Town of Ellington Board of Education, 323 F.3d 206, 212-213 (2nd Cir.

2003).

- 20 -

4.    At a very minimum due process requires notice and a hearing where the plaintiff has a meaningful opportunity to confront the evidence against him.

   If you find that on March 31, 2000 plaintiff met with Drs. Regina Smith and Robert Smith without having notice of the charges against him or that plaintiff did not have a meaningful opportunity to confront the evidence, then you may conclude that the March 31, 2000 meeting was not a due process hearing.

   Brady v. Gebbie, 859 F.2d 1543 (9th Cir. 1988).  Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1984).

5.    In order for plaintiff to prevail, plaintiff must prove by the preponderance of the evidence that the underlying acts of UCONN , Maryanski and/or Smith were illegal or tortious.  If you find that plaintiff was removed from the position of Campus Director without due process, you may find that an illegal or tortious act occurred.

   Fink v. Magner, 988 F.Supp 70 (D. Conn. 1997)

6.    Liability for aiding and abetting turns on how much encouragement or assistance is substantial enough.

   If you find that the University of Hartford and Townsend encouraged and insisted that plaintiff is relieved of the position of Campus Director and because of their encouragement and insistence plaintiff was removed as Campus Director, you may find that the conduct of the University of Hartford and Townsend were substantial.

   If you find that the University of Hartford and Townsend acts

- 21 -

encouraging and insisting were a substantial factor in causing the resulting

denial of due process of plaintiff, you may find that the University of Hartford

and Townsend are liable to plaintiff for the damages he proves.

Halberstam v. Welch, 705 F.2d 472, 478 (1983); Carney v. DeWees, 136

Conn. 256, 262 (1949); Second Restatement of Torts, § 876.

7.  If you find the defendants liable on the claim, then you must award the plaintiff

sufficient damages to compensate plaintiff for any injury proximately caused by

the defendant's conduct.  If you find that plaintiff would not have been relieved

of his duties as Campus Director and subsequently denied due process but for

the encouragement and insistence of the University of Hartford and Townsend;

and University of Hartford and Townsend's conduct is a substantial factor that

brought about stress, frustration and anguish from plaintiff's efforts to retain his

position as Campus Director, then you must find that the actions of the

University of Hartford and Townsend is the proximate cause of plaintiff's injury .

Doe v. Manheimer, 212 Conn. 748, 757 – 758 (1989);  Phelps v. Lankes, 74

Conn.App. 579, 602 (2003);  Carey et al v. Piphus et al, 435 U.S. 245 (1997).

8.  Compensatory damages seek to make plaintiff whole by compensating him for

the damage that he has suffered.  If plaintiff prevails he is entitled to

compensatory damages for the stress, frustration, anguish, etc. that he

suffered because of the defendant's conduct.

You may only award compensatory damages for the injuries that plaintiff

proves were proximately caused by the defendants' wrongful conduct.  Plaintiff

has the burden of proving damages by the preponderance of the evidence.

The damage that you award must be fair and reasonable, neither inadequate nor excessive.

<u>Story Parchment Co. v. Paterson Parchment Paper Co.</u>, 282 U.S. 555 (1931).

9.    As part of your duty, you may award damages to the plaintiff for back honorarium, interest and future loss of honorarium for the harm sustained by plaintiff resulting for the wrongful removal of plaintiff as Campus Director.

<u>Preston v. Phelps Dodge Copper Products Co.</u>, 35 Conn.App. 850, 857.


<u>Proposed Verdict Form</u>

On plaintiff, Remesh Malla, claim against defendants, The University of Hartford and Sallie Townsend, as submitted, we find in favor of _____ _____


We find plaintiff damages to be:


_____ dollars for past and future honorarium;

_____ dollars for stress, frustration, humiliation, anxiety, and damage to reputation.


_____
                                        Foreperson


- 23 -

Defendant's Proposed Jury Instructions:

I.    PROPERTY INTEREST

In order to find that Dr. Malla had a protected property interest in his role as campus director, you must find that he had more than an abstract need or desire for it and you must find that he had more than a one-sided or unilateral expectation of continuing on in that role.  You must find that he had a legitimate claim of entitlement to that benefit.

You must find that the property interest in this role and the dimensions of that interest are defined by existing rules or understandings that stem from an independent source, such as state law, or rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972)

Dr. Malla's financial need or the length of his service will not, standing alone, give him a protected property interest in continuing as campus director.  Without a state-law entitlement to his position, these concerns will not give Dr. Malla a protected property interest in his role as campus director.

Donato v. Plainview-Old Bethpage Central School District, 96 F.3d 623, 630 (2nd Cir. 1996).

II.   LIBERTY INTEREST

In order to find that Dr. Malla's liberty interests have been affected by his removal as campus director, you must find that his removal imposed on him a stigma or other disability that prevented him from taking advantage of other employment

- 24 -

opportunities.  Mere proof that his removal from this role, without more, might make

him less "attractive" to other employers is not sufficient to establish a deprivation of a

liberty interest.

Board of Regents v. Roth, 408 U.S. 564, 574, 92 S.Ct. 2701, 2707 (1972).

It is not enough for you to find that Dr. Malla was merely not reinstated in order

to find a deprivation of a liberty interest.  You must find that the University of

Connecticut's actions were of the sort to effectively hinder Dr. Malla's ability to

practice in his chosen profession.

Huff v. West Haven Board of Education, 10 F.Supp.2d. 117, 122 (D. Conn.

1998)(Dorsey, J.)(citing Meyer v. Nebraska, 262 U.S. 390, 399 (1923)).

To establish a sufficient liberty interest, Dr. Malla must show not only that he

has been stigmatized, but that he was stigmatized in or as a result of the removal

process and that he was denied a meaningful hearing to clear his name.  You must

find that the claims not only seriously damaged Dr. Malla's standing and association

in the community or foreclosed his freedom to pursue other employment

opportunities, but also that the charges against Dr. Malla were false.  You further must

find that the stigmatizing charges were made public other than in conjunction with the

removal process.

Wells v. Doland, 711 F.2d. 670, 676 (5th Cir. 1983)


III.    AIDING AND ABETTING

In order for you to find that the University of Hartford and Dr. Townsend aided

and abetted the University of Connecticut, you must find that (1) UCONN has

- 25 -

performed a wrongful act which caused the plaintiff some injury; (2) the University of Hartford and Dr. Townsend were generally aware of their role as part of an overall illegal or tortuous activity at the time that they provided the assistance; and (3) the University of Hartford and Dr. Townsend must knowingly and substantially assist the principal violation. In determining whether there has been aiding and abetting, you may look at the nature of the act encouraged, the amount of assistance given by the University of Hartford and Dr. Townsend, their presence or absence at the time of the wrongful act, their relationship with the University of Connecticut, and their state of mind.

Halberstam v. Welch, 705 F.2d. 472, 476-477 (D.C. Cir. 1983).


IV.    DUE PROCESS

If you find that the plaintiff has been deprived of a constitutionally protected property or liberty interest, you must also find that the plaintiff was deprived of that interest without some form of a meaningful hearing. A fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

Due process is not a fixed concept and calls for such procedural protections as the particular situation demands. In determining the nature and extent of due process that is required, you must look at three factors: (1) the private interest that will be affected by the action; (2) the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional and substitute procedural safeguards; and (3) the state's interest, including the function

- 26 -

involved and the financial and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Mathews v. Eldridge</u>, 424 U.S. 319, 334-5, 96 S.Ct. 893, 902-3 (1976).

The plaintiff has claimed that he was entitled to a full evidentiary hearing before he was removed as Campus Director.  However, all that is necessary is that the procedures be tailored, in light of the decision to be made, to the capabilities and circumstances of those who are to be heard.  A full evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. <u>Mathews</u>, 424 U.S. at 348, 96 S.Ct. at 909.


V.    DAMAGES

If you find that Dr. Malla would have been justifiably removed as campus director from UCONN for the Space Grant Consortium even if a full and proper hearing had been held, then Dr. Malla will not be entitled to recover any compensatory damages for his claimed violation of due process.  In this sense, Dr. Malla's injuries, if any, would be attributable to the justified removal as campus director, rather than some deficiency in the procedure for removal, and he cannot be compensated for that removal.  You may find that Dr. Malla was distressed that his denials of wrongdoing were not believed, but that would not be sufficient to justify an award of compensatory damages.

<u>Carey v. Piphus</u>, 435 U.S. 247, 260-263, 98 S.Ct. 1042, 1050-1052  (1978).

- 27 -

THE PLAINTIFF – RAMESH MALLA

Mark S. Loman
484 Main Street
Suite 24 B
Middletown, CT  06457
(phone) (860) 343-1879
(fax) (860) 343-9254
Juris No.:  CT19489

THE DEFENDANTS – UNIVERSITY OF
HARTFORD AND SALLIE S. TOWNSEND

Thomas P. Chapman
Law Offices of Scott B. Clendaniel
300 Windsor Street
P.O. Box 2138
Hartford, CT  06145-2138
Phone: (860) 277-7480
fax:  (860) 277-7438
Federal Bar:  CT 10178

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

Jun 21  3 56 PM '04

U.S DISTRICT COURT
NEW HAVEN, CONN.

Malla, Ramesh B.                  )
                                  )
          Plaintiff               )     Case No. 3:02CV481 (JBA)
                                  )
     v.                           )     Judge Janet Bond Arterton
                                  )
University of Connecticut, Et. Al. )
                                  )
          Defendants              )     Notice of Manual Filing
                                  )

Please take notice that Plaintiff, Ramesh B. Malla, has manually filed the following

Document, Joint Trial Memorandum, dated June 21, 2004.

This document has not been filed electronically because

[X ]   the document or thing cannot be converted to an electronic format
[  ]   the electronic file size of the document exceeds 1.5 megabytes
[  ]   the document or thing is filed under seal pursuant to Local Rule of Civil Procedure
       5(d) or Local Rule of Criminal Procedure 57(b)
[  ]   Plaintiff/Defendant is excused from filing this document or thing by Court order.

The document or thing has been manually served on all parties.

Respectfully submitted,

Mark S. Loman
484 Main Street, Suite 24B
Middletown, CT 06457
Phone: (860) 343-1879
Fax: (860) 343-9254
E-mail: atty_loman@att.net
federal bar number:  CT 19489